IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **DONTRELL ANTHONY POWELL**, <br><br> Defendant. | Case No. 24-03019-01-CR-S-BCW |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through R. Matthew Price, United States Attorney for the Western District of Missouri, and Jessica R. Eatmon, Assistant United States Attorney, respectfully submits this sentencing memorandum in the above-captioned matter, set for a sentencing hearing on September 9, 2025. For the reasons set forth below, the Government recommends that this Court sentence the defendant to a term of imprisonment of 420 months on Count 1, followed by a consecutive 60 months on Count 7, for a total sentence of 480 months. The Government also seeks a final order of forfeiture.

## I. BACKGROUND

On January 21, 2025, the defendant, Dontrell Anthony Powell, pleaded guilty before United States Magistrate Judge David P. Rush to Counts 1 and 7 of an 18-count Second Superseding Indictment. Count 1 charged the defendant with violating 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A), that is, conspiracy to distribute 50 grams or more of actual methamphetamine. Count 7 charged the defendant with violation 18 U.S.C. § 924(c)(1)(A), that is, possession of a firearm in furtherance of a drug trafficking crime. The defendant also admitted to the Forfeiture Allegation, wherein he agreed to forfeit $140,000 seized from his residence on

January 18, 2024, and to the imposition of a money judgment representing the proceeds he obtained during the conspiracy from his distribution of methamphetamine. This Court accepted the defendant's plea on February 5, 2025, and on July 18, 2025, the final Presentence Investigation Report ("PSR") was filed. (Doc. 475, PSR.)

## II. LEGAL STANDARD

Although the Sentencing Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220 (2005), sentencing still begins with a properly calculated advisory Sentencing Guidelines range. *See Gall v. United States*, 128 S. Ct. 586, 596 (2007); *Rita v. United States*, 127 S. Ct. 2456, 2464-65 (2007); *Booker*, 543 U.S. at 245-46; *United States v. Plaza*, 471 F.3d 928, 930 (8th Cir. 2006). Next, the Court must decide if a traditional departure under the Guidelines is appropriate, thus creating an advisory Guidelines sentencing range. *Plaza*, 471 F.3d at 930. After calculating the advisory Guidelines range, the Court considers that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence. *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007); *Plaza*, 471 F.3d at 930.

## III. DISCUSSION

### A. Statutory and Guidelines Calculations

#### 1. Guidelines Calculations

The PSR calculates the defendant's base offense level at 38 and assesses the following enhancements: a two-level enhancement because he committed the offense as part of a pattern of criminal conduct engaged in as a livelihood; a four-level enhancement because he was an organizer or leader of the offense; and a two-level enhancement because he attempted to obstruct or impede the administration of justice by influencing a witness. (PSR ¶¶ 45, 46, 48, & 49.) Utilizing an adjusted offense level of 46, the defendant's total offense level, after acceptance of responsibility,

is 43. (PSR ¶ 54.) Based upon a total offense level of 43 and a criminal history category of II, the PSR calculates the defendant's sentencing range for Count 1 at life imprisonment, followed by a consecutive 60 months' imprisonment on Count 7. (PSR ¶ 92.) The PSR also notes two potential bases for an upward departure from the sentencing guideline range: (1) his criminal history category does not adequately reflect the seriousness of his past criminal conduct or the likelihood that he will commit other crimes (U.S.S.G. § 4A1.3); and (2) he possessed a semiautomatic firearm capable of accepting a large capacity magazine in connection with a controlled substance offense (U.S.S.G. § 5K2.17). (PSR ¶¶ 106 & 107.) The Government concurs with these calculations.

2. *Defendant's Objections*

Paragraphs 8, 10, 11, 27, 39, 46, 48, & 49

The defendant has objected to the PSR's assessment of two levels for his obstruction of justice, four levels for his role as an organizer or leader of the offense, and the additional two levels for criminal livelihood. The Government will address each of these arguments in turn.

Obstruction of Justice

The defendant objects to imposition of an enhancement pursuant to U.S.S.G. § 3C1.1, which provides for a two-level enhancement if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." Note 4 provides examples of covered conduct, including "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so."

3

In objecting to the enhancement, the defendant argues that his statements to his brother, Dreshawn Powell, were meant to encourage Dreshawn to protect himself by not discussing his case in the presence of other inmates. He argues he did not know about his brother's decision to cooperate with the Government at the time of the statement, and the statement did not obstruct the investigation or prosecution of the case in any meaningful way because the case against him was well-established at the time he made the statement.

Here, the undisputed facts are that the defendant questioned his brother regarding who he has spoken with regarding their case, that he then offered to put money on his commissary account, and that he then stated, "don't talk to nobody about shit. We gonna get through this shit." (PSR ¶ 27.) Later in the call, after learning it was someone else who had been talking about their case, the defendant explained "I thought yo ass was fucking talking" and made sure that the female he was on the phone with passed the message along to their Kansas-based co-conspirators. While it may be true that the defendant was attempting to encourage Dreshawn to protect himself, he was also very clearly attempting to protect himself and the remaining members of the drug trafficking organization at the same time. The strength of the Government's case is not a factor in the analysis, nor does the law require that the conduct *actually* impede or obstruct the prosecution. The defendant attempted to unlawfully influence his brother into keeping quiet, and the Government believes the defendant's objection should be overruled.

<u>Leadership Enhancement</u>

The defendant next argues he should not be assessed the four-level leadership enhancement (U.S.S.G. § 3B1.1(a)) because his co-conspirators were acting of their own volition and not as underlings subject to his control. The defendant acknowledges that his involvement in the offense was substantial.

Factors the Court should consider in determining whether to apply a leadership enhancement include "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, cmt. 4.

As the Eighth Circuit has stated, "[a] defendant can be an organizer or leader within the meaning of this guideline by supplying drugs to others without directly controlling other participants in the conspiracy[.]" *United States v. Lashley*, 251 F.3d 706, 712 (8th Cir. 2001); *see also United States v. Johnson,* 906 F.2d 1285, 1291–92 (8th Cir. 1990) (holding that a defendant need not have directly controlled others in the organization to have functioned as an organizer).

The Government also recognizes that being a distributor on its own is insufficient for application of the enhancement. *See United States v. Bahena,* 223 F.3d 797, 804 (8th Cir. 2000). Such a rule makes sense, as the average participant in a drug conspiracy distributes methamphetamine. However, in this case, the defendant did more than distribute methamphetamine to others; he distributed distributive amounts of methamphetamine to others. *See United States v. Schwarck*, 961 F.2d 121, 123 (8th Cir. 1992) (upholding a leadership enhancement where the defendant sold distributive amounts of cocaine, decided when and to whom he would sell it, and shared in the profits by receiving a portion of the cocaine he sold).

In *United States v. Harry*, 960 F.2d 51, 54–55 (8th Cir. 1992), the Eighth Circuit upheld the application of the four-level leadership enhancement in a marijuana and cocaine conspiracy, finding that the defendant's activities satisfied several of the factors set out in the Guidelines. Specifically, the court found that the defendant exercised some decision-making authority by

determining the amount of marijuana to be obtained and by determining when and to whom he would resell the drug. *Id.* The court explained that these things showed that "[h]e participated not on a low level in the distribution of drugs, but high up in the chain of distribution." *Id*. The court also placed emphasis on the fact that the defendant "received a profit on every pound of marijuana he sold," and that he "planned the ordering, storage, and redistribution of the cocaine and marijuana." *Id.*

Here, there can be no legitimate argument that the defendant was not both a leader and organizer of this two-plus-year drug-trafficking conspiracy. In addition to the fact that the defendant was distributing large amounts of methamphetamine, there is substantial evidence to show that the defendant indirectly controlled his co-defendants in the sense that he was directly responsible for planning and organizing the importation of all of the methamphetamine involved in the scope of this conspiracy to the Springfield, Missouri, area, that he exercised decision-making authority regarding the price of that methamphetamine, and that he claimed a right to a larger share of the fruits of the crime.

Looking to the nature and scope of the activity, the defendant admittedly orchestrated the delivery of 100 pounds of methamphetamine to Springfield, Missouri. In connection with the seized shipment in January 2024, the defendant purchased a burner cell phone, created a fake identity in the name "William Benford", and arranged for the transport of the Dodge Magnum to Springfield. (PSR ¶¶ 15-17.) He was also routinely distributing ten pounds of methamphetamine to at least one co-conspirator two to three times per week during the conspiracy. (PSR ¶ 36.) Thus, just like the defendant in *Harry*, the defendant was responsible for planning the amounts of methamphetamine involved in the conspiracy and the transporting of that methamphetamine to town. In other words, "he participated not on a low level in the distribution of drugs, but high up

in the chain of distribution." 960 F.2d at 55. Without the defendant, all of the methamphetamine involved in this seven-defendant conspiracy (at least 100 pounds) did not get to town, and without him, the methamphetamine did not go out into the community. This factor alone shows that the defendant's degree of organizing and planning the offense was much higher than that of his co-defendants.

In addition, the defendant appeared to be the one benefiting from the fruits of this drug conspiracy. During this investigation, he was known to have several vehicles, including the 2018 Mercedes GLE he drove to pick up the Dodge Magnum (total purchase price of $77,344.48) – despite no legitimate means of employment. As noted above, application of a leadership enhancement is appropriate in circumstances where a defendant profits significantly from his distribution of methamphetamine. *See Harry*, 960 F.2d at 54-55.

For these reasons, and given the broad definition of what constitutes a leadership and organizational role in the Guidelines, the Government believes the evidence shows, by a preponderance of the evidence, that the defendant was an organizer or leader of criminal activity involving five or more participants and the four-level enhancement should be imposed.

Criminal Livelihood

Should this Court find the defendant responsible for a leadership enhancement, the Government also believes he should be assessed a two-level enhancement pursuant to U.S.S.G § 2D1.1(b)(16)(E) for his commission of the offense as part of a pattern of criminal conduct engaged in as a livelihood.

The definition of a pattern of criminal conduct engaged in as a livelihood is in U.S.S.G. § 4B1.3, commentary 1 and 2. A "pattern of criminal conduct" is planned criminal acts occurring over a substantial period of time. "Engaged in as a livelihood" means that (A) the defendant

derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (B) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period.

Here, the defendant was arrested in April 2023 in possession of approximately $139,950 in U.S. currency, which he admits was proceeds from his distribution of methamphetamine. (Plea Agreement, pp. 2-3.) Then, he was arrested in January 2024 in possession of $140,000 in U.S. currency, which he also admits was proceeds from his distribution of methamphetamine. (Plea Agreement, pp. 2-3.) According to the PSR, he maintained no other employment during the twelve-month period prior to his January 2024 arrest. (PSR ¶ 85.) The hourly federal minimum wage during the relevant time-period was $7.25, making the amounts he was profiting well in excess of 2,000 times the then existing hourly minimum wage under federal law. For these reasons, the Government believes the two-level criminal livelihood enhancement is appropriate.

### B. Statutory Sentencing Factors

This Court must "impose a sentence sufficient, but not greater than necessary" to address the factors enumerated in 18 U.S.C. § 3553, including the Guidelines issued by the U.S. Sentencing Commission. These factors include:

1. *Nature and Circumstances of the Offense and History and Characteristics of the Defendant*

The defendant appears before this Court for sentencing at the age of 35 with an understated criminal history category of II. Prior to his involvement in the instant offense, the defendant sustained felony convictions for possession of a controlled substance and possession of dangerous drugs for sale. He also sustained a misdemeanor conviction for carrying a loaded firearm in a public place. (PSR ¶ 57.) When he was 24 years old, he was arrested in Arizona while transporting

five pounds of methamphetamine. (PSR ¶ 59.) He was sentenced to serve five years' imprisonment in 2015. (PSR ¶ 49.) While incarcerated, he received disciplinary violations for violating rules, sexual contact, and tattooing. (PSR ¶ 59.) He was released from prison in 2020, and by 2022, he was leading a multi-state drug trafficking organization responsible for the introduction of nearly 100 pounds of methamphetamine and two pounds of fentanyl into the Springfield community on one single occasion – drugs with a street value of $1,850,000.

Later search of the defendant's car yielded a loaded Glock firearm. (PSR ¶ 22.) Search of his residence yielded an additional $140,000 in cash, an AM-15 rifle, and three high-capacity Glock magazines, all of which were loaded (pictured below). (PSR ¶¶ 20-21.)



Unlike several of his co-defendants, the defendant did not struggle with methamphetamine addiction. (PSR ¶¶ 80-81.) His involvement in the instant offense appears to have been for money and power, both of which he maintained for the duration of the offense.[1] The effects of the methamphetamine and fentanyl the defendant distributed during this conspiracy will outlast any prison sentence he receives, regardless of its severity. The Government is asking for a total sentence of 480 months' imprisonment in this case. That sentence is significant, but it is still below

---

[1] The defendant's Cash App Cashtag was "Its2Easy20" and during a six-month period in 2023, he laundered approximately $30,000 through the account.

9

the defendant's advisory Guidelines range, and it takes into account the limited credit the defendant should receive for pleading guilty to the offense. However, given the serious nature of the crimes he has committed, in conjunction with his criminal history, the Government believes a substantial sentence is especially warranted in this case, regardless of any mitigating factors the Court may consider.

    2. *Need to Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Deterrence to Criminal Conduct, and Protect the Public from Further Crimes of the Defendant*

Methamphetamine and fentanyl are poisons that destroy lives, families, and communities. According to the National Institute on Drug Abuse, methamphetamine is the drug that most contributes to violent crime in our communities across the country. *https://www.drugabuse.gov/publications/research-reports/methamphetamine/overview.* The amount of methamphetamine the defendant trafficked to Springfield, Missouri, while in possession of firearms, was enough to supply a dose to every man, woman, and child in the community.[2]

In addition, according to the Centers for Disease Control, fentanyl is the leading cause of overdose deaths in the United States, responsible for an estimated 74,702 deaths in 2023, 86 of which occurred in Greene County, Missouri. *See https://health.mo.gov/data/opioids/. See also https://www.cdc.gov/nchs/pressroom/nchs_press_releases/2024/20240515.htm.* According to the Drug Enforcement Administration, the amount of fentanyl seized from the defendant and his co-conspirators on one occasion had the potential to kill 500,000 people. *https://www.dea.gov/resources/facts-about-fentanyl*

Congress has mandated that the defendant serve a significant sentence for the role he played in the trafficking of methamphetamine and fentanyl to the Springfield, Missouri, area. Given the

---

[2] According to the 2020 census, the population of Springfield, Missouri, was approximately 169,176.

nature of his crime, as set forth in the PSR, the Government believes a sentence of 480 months appropriately promotes respect for the law, provides just punishment, deters similar behavior from others, and protects the public from further crimes of the defendant.

3. *Need to Provide the Defendant with Education, Vocational Training, or Other Correctional Treatment*

The Government would not object to the defendant's placement in any educational, vocational, or treatment programs offered by the United States Bureau of Prisons.

## IV. <u>CONCLUSION</u>

Section 3553 requires this Court to impose a sentence that considers a variety of factors, including the advisory Guidelines range. The Government respectfully requests that the defendant's behavior and history, the need to promote respect for the law, the need to protect the public from the defendant, and any other statutory sentencing factors be considered in reaching an appropriate sentence. The Government respectfully recommends that this Court impose a sentence of 480 months, which is sufficient, but not greater than necessary, to address the factors in Section 3553.

Respectfully submitted,

R. Matthew Price
United States Attorney

By: */s/ Jessica R. Eatmon*
Jessica R. Eatmon
Missouri Bar #69322
Assistant United States Attorney
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri 65806
(417) 831-4406

# CERTIFICATE OF SERVICE

I hereby certify that on this the 26th day of August 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ Jessica R. Eatmon*
Jessica R. Eatmon
Assistant United States Attorney